572 A.2d 660

## IN THE MATTER OF FAIRFIELD TOWNSHIP.

Superior Court of New Jersey
Appellate Division

Argued March 7, 1990—Decided April 10, 1990.

Before Judges GAULKIN, SCALERA and D'ANNUNZIO.[1]

*Richard J. McManus* argued the cause for appellant Mayor Anna Marie Rotonda (*Pane, Youssouf & McManus,* attorneys).

---

[1]The parties have consented to the participation of Judge Scalera, who did not sit at the oral argument.

*John M. Carbone* argued the cause for respondent Township of Fairfield (*Carbone and Faasse,* attorneys).

The opinion of the court was delivered by

GAULKIN, P.J.A.D.

The sole question presented on this appeal, brought by the Mayor of the Township of Fairfield, is whether appointment of the municipal judge is to be made by the mayor with the advice and consent of the council or, as the trial judge held, by the municipal governing body.

The parties agree that the issue requires our interpretation and application of this portion of *N.J.S.A.* 2A:8–5:

\* \* \* \* \* \* \* \*

Each judge of a municipal court of a single municipality shall be appointed as follows:

In municipalities governed by a mayor-council form of government, by the mayor with the advice and consent of council; provided, that in municipalities governed under the borough law (chapters 86 to 94 of Title 40 of the Revised Statutes), if the mayor fails to nominate a judge within 30 days after the office becomes vacant, or the council fails to confirm any nomination made by the mayor within 30 days after the same is made, then the council shall appoint the judge; and

In all other municipalities, by the governing body of the municipality.

Fairfield has adopted the Faulkner Act "small municipality plan C" as its form of government. *N.J.S.A.* 40:69A–139 *et seq.* (repealed).[2] The municipality is accordingly governed "by an elected mayor and councilmen." *N.J.S.A.* 40:69A–140 (repealed). At first blush, that would appear to be "a mayor-council form of government" calling for appointment of the municipal judge "by the mayor with the advice and consent of council." The respondent municipal council, however, urges that its government is not "a mayor-council form" within the meaning of *N.J.S.A.* 2A:8–5.

---

[2]Notwithstanding the repeal, the statutory provisions continue in effect until the adopted charter is "abandoned or altered" pursuant to law. *N.J.S.A.* 40:69A–208.3.

The relevant provisions of *N.J.S.A.* 2A:8–5 have been in effect since 1948. In 1950, the Legislature adopted the Faulkner Act, designed to permit "each municipality to select on its own initiative and without subsequent legislative approval any one of several forms of municipal government previously approved by the Legislature." *Bucino v. Malone*, 12 *N.J.* 330, 335, 96 *A.*2d 669 (1953). The approved plans were described in *Bucino* as

grouped in three general local government divisions—the Mayor–Council, the Council–Manager, and the Small Municipality. There are six alternative plans under the Mayor–Council Division, four under the Council–Manager Division, and four under the Small Municipality Division, or a total of 14 optional plans.

*Id.* at 336, 96 *A.*2d 669.

Although only six of the statutory forms are designated as "mayor-council" plans, all 14 call for both a mayor and a council. In the "mayor-council" plans, the mayor is elected by the voters and is not a member of the council; in all other plans, the mayor is a member of the council, elected as mayor by the council in some plans and by the voters in others.

The council urges that in Faulkner Act municipalities only those plans designated "mayor-council" should be treated as "mayor-council" forms under *N.J.S.A.* 2A:8–5. The mayor does not contend that every municipality having a mayor and a council, *i.e.*, every Faulkner Act municipality, is a "mayor-council" form within the meaning of *N.J.S.A.* 2A:8–5. She urges, rather, that the particular characteristics of the "small municipality plan C" justify characterizing it as a "mayor-council" form for purposes of that statute.

We agree with both parties that the term "mayor-council" form as used in *N.J.S.A.* 2A:8–5 cannot reasonably be read as referring to every form of government in which there is a mayor and a council. Under the Faulkner Act, every municipality has a mayor and a council; the existence of those offices says nothing about the form of government. As the parties recognize, the distinctive treatment provided by *N.J.S.A.* 2A:8–5 for municipal judge appointments under a "mayor-council

form" presumably reflects some identifiable and relevant difference between that and other forms. We perceive the critical difference to be in the role of the mayor.

The mayor is not a council member in any of the Faulkner Act "mayor-council" plans, but is a council member in all other Faulkner Act plans. That difference between "mayor-council" and other plans impacts directly on the appointment process: it would be anomalous to permit or require a mayor to vote, or to otherwise participate, in the council's confirmation or rejection of his or her own appointment. The reasonable reading of *N.J.S.A.* 2A:8–5 is that a "mayor-council form of government" permitting mayoral appointment of the municipal judge must be one in which the mayor has no role as a council member. Faulkner Act council-manager and small municipality plans thus are not "mayor-council" forms of government within the meaning of *N.J.S.A.* 2A:8–5.

We affirm that portion of the February 8, 1989 final order which determines that "the governing body of the Township of Fairfield shall have the right to appoint the Judge of the Municipal Court."